**INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., Plaintiffs-Appellees,**

v.

**Otis BOWEN et al., Defendants-Appellants.**

No. 78–2278.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1979.

Decided May 16, 1979.*

---

* This appeal was originally decided by unreported order on May 16, 1979. *See* Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

J. Gordon Gibbs, Jr., Asst. Atty. Gen., Indianapolis, Ind., for defendants-appellants.

Barry A. Fisher, David Grosz, Beverly Hills, Cal., Richard D. Boyle, Indianapolis, Ind., for plaintiffs-appellees.

Before PELL and TONE, Circuit Judges, and LEIGHTON, District Judge.**

PELL, Circuit Judge.

The defendants appeal from a summary judgment granting a permanent injunction. The case was presented to the district court on a set of stipulated facts. The plaintiff, International Society for Krishna Consciousness, Inc. (ISKCON), alleges it is a religious organization which practices "San-

** Judge George N. Leighton of the United States District Court for the Northern District of Illinois is sitting by designation.

kirtan," a ritual requiring its devotees to go into public places, disseminate and sell religious literature, and solicit contributions. The defendants are Indiana state officials responsible for the operation of the Indiana State Fair. ISKCON applied for permission to practice Sankirtan at the Indiana State Fair. The defendants provided ISKCON with a standard application for a booth, informing ISKCON of its uniform policy to prohibit peripatetic solicitation on the fairgrounds. After an unsuccessful attempt by the parties to settle their differences, ISKCON brought this action in the district court.

The court entered a judgment permanently enjoining defendants and their successors from interfering in any way with the plaintiff when its members pay admission to the Indiana State Fair and practice the Sankirtan ritual described above on public thoroughfares of the fairgrounds during normal operating hours. The judgment also permanently enjoined the defendants and their successors from requiring the ISKCON members to practice Sankirtan in a booth. This injunction was issued subject to four conditions. The first required ISKCON members to wear identification cards. The second forbade ISKCON members from representing their activities as sponsored by or connected with any Fair or other government agency. The third forbade ISKCON members from touching unconsenting persons. Finally, the fourth condition forbade ISKCON members to practice Sankirtan with unconsenting persons waiting in line or watching a performance or attraction.

■ The defendants raise six government interests to justify confining Sankirtan to a booth. For the following reasons we hold that the interests urged do not justify the restriction. Furthermore, the consideration of these interests in combination does not change our decision. The defendants first urge that the public safety will be threatened. Although interference with vehicular and pedestrian traffic might under other circumstances justify restrictions on the activities at issue here, see, e.

g., *Cantwell v. Connecticut*, 310 U.S. 296, 307, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. State*, 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *ISKCON v. Rochford*, 585 F.2d 263, 268–69 (7th Cir. 1978), the defendants have submitted no evidence that serious disruption would result from permitting these activities. The only support the defendants have offered to show that the plaintiff's activities threaten this interest is a citation to the transcript in which the plaintiff's attorney mentions "the potential for interference with ingress and egress which my clients have bent over backward to avoid. . . ." The district court properly did not accept this single statement as proving the existence of a threat to public order and safety. Furthermore, even if the defendants had proved such a threat, the record contains no showing that the defendants were unable to regulate the activities in a less restrictive manner than by confining the plaintiff's activities to a booth. *Sherbert v. Verner*, 374 U.S. 398, 406–407, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Wright v. Chief of Transit Police*, 558 F.2d 67, 68 (2d Cir. 1977).

■ For the same reasons, we must reject the defendants' argument that the use of straight pins to attach flowers to the clothing of fairgoers threatens the state interest in public safety. According to the defendants, the discarded pins present a hazard to barefooted pedestrians and to children who attempt to pick up the flowers. The defendants have failed to prove that this theoretical threat actually exists or that the alleged danger could not be prevented in a manner less burdensome than by the use of a booth.[1]

■ Other interests advanced by the defendants clearly can be protected by methods less restrictive than confining the practice of Sankirtan to a booth. The interest in combating fraud is served by the use of penal laws to punish this conduct. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Cantwell v. Connecticut*, 310

---

1. It is also unclear that requiring the devotees to use a booth would remedy this problem.

U.S. 296, 306, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).[2] Similarly, the state statute punishing batteries, protects the interest in public safety threatened by the practice of pinning flowers on the fair patrons. In addition, we note that the injunction itself prohibits plaintiffs from making certain false representations and requires ISKCON members to wear identification cards. The injunction also contains a proviso against touching persons without consent. The state is thereby provided with more expeditious remedies against these abuses.

Finally, the defendants assert that the practice of Sankirtan generates litter and interferes with the business of other concessionaires. The generation of litter as a result of the otherwise lawful distribution of literature does not justify the restrictions sought by the defendants:

> Any burden imposed upon the . . . authorities in cleaning and caring for the streets as an indirect result of such distribution results from the constitutional protection of the freedom of speech and press. This constitutional protection does not deprive [the government] of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets.

*Schneider v. State*, 308 U.S. 147, 162–63, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939). The asserted interest in protecting the concessionaires from the interference described in the affidavits in the record likewise does not constitute a compelling interest and does not justify the particular form of confining restraint sought by the defendants. Although the presence of the wandering devotees near the booths of concessionaires may occasionally offend potential customers and drive them away, the Constitution forbids the defendants from restricting Sankirtan on this ground alone. The constitutional rights at issue here are "strong medicine" and the resulting "verbal tumult" or "discord" are their "necessary side-effects."

*Cohen v. California*, 403 U.S. 15, 24–25, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Even if the ritual at issue here so offended potential customers at the state fair that the state policy to foster commerce were placed in some jeopardy, which has not been shown to be the case, the restriction at issue here could not stand. As this court noted in *Collin v. Smith*, 578 F.2d 1197 (7th Cir.), cert. denied, 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978):

> That the effective exercise of First Amendment rights may undercut a given government's policy on some issue is, indeed, one of the purposes of those rights. No distinction is constitutionally admissible that turns on the intrinsic justice of the policy in issue.

578 F.2d at 1205.

The defendants' final argument, that requiring only commercial activities to be confined to a booth is a denial of equal protection of the laws, is without merit. "To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech." *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).

We emphasize, however, that we are affirming the injunction on the basis of the record before the district court. Sound judicial discretion may call for modification of this decree in the future, if the circumstances, whether of law or fact, in effect at the time of its issuance should change. *System Federation No. 91 v. Wright*, 364 U.S. 642, 646–47, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); *United States v. Swift & Co.*, 286 U.S. 106, 114–15, 52 S.Ct. 460, 76 L.Ed. 999 (1932).

Finally, we are not unmindful, as anyone cannot be who has travelled through a major airport facility in recent years, that practitioners of Sankirtan have been regarded as annoying and often downright

---

2. Furthermore, we have difficulty seeing a relation between the state interest in preventing fraud and confining Sankirtan to a booth.

irritating by those they approach. It is not, however, the cases in which the auditor is in agreement with that which is being expressed which reach the courts under the rubric of the First Amendment. Distaste for what is being expressed, and often absolute revulsion, appear to be the hallmarks of the exercise of First Amendment rights and probably are the necessary contexts in which the preservation of those rights can be firmly assured.

The judgment of the district court accordingly is affirmed.