Chris **WESTFALL, Individually and on behalf of the members of the Holy Spirit Association for the Unification of World Christianity**

v.

**BOARD OF COMMISSIONERS OF CLAYTON COUNTY, and Lillian Castleberry, Director, Business License Department, Clayton County.**

Civ. A. No. C78–1458A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 30, 1979.

On Motion for Partial Reconsideration
Sept. 26, 1979.

Andrew H. Marshall and J. Hue Henry, Athens, Ga., Barry A. Fisher Law Offices, Barry A. Fisher, Larry J. Roberts, David Grosz, Los Angeles, Cal., for plaintiff.

John R. McCannon, George E. Glaze and Kirby A. Glaze, of Glaze, McNally & Glaze, Jonesboro, Ga., for defendants.

## ORDER

NEWELL EDENFIELD, District Judge.

This civil rights action is before the court on cross-motions for summary judgment and on plaintiff's motion for an interim award of attorney's fees.

1. Plaintiff, a member of the Holy Spirit Association for the Unification of World Christianity, brings this action on behalf of himself and other members of the church [1] in order to obtain religious solicitation privileges in Clayton County. The case began on August 28, 1978, when plaintiff filed his complaint attacking certain licensing provisions of the county's Code of Ordinances as violative of the first amendment when applied to him and to others of his organization. A request for a temporary restraining order was not ruled on at that time, as defendants, apparently recognizing that their then-existing law was constitutionally defective as applied, requested a period of approximately a week in which to draft and enact a replacement. The Code of Ordinances was thereafter amended on September 5, 1978, by addition of Resolution No. 78-37, which provides for the issuance of permits for religious and charitable solicitation and governs the conduct of such solicitors. A permit and identification cards were apparently subsequently issued to members of plaintiff's church.

Plaintiff now attacks certain provisions of the new ordinance which provide that

Soliciting or canvassing upon the public streets, areas or parks or calling from house to house in the County shall be subject to the following regulations:

1. All soliciting or canvassing upon the public streets, areas or parks or calling from house to house in the County shall only occur between the hours of 9:00 a. m. and 6:00 p. m.

2. The number of solicitors or canvassers or callers from house to house in the County for any single firm, corporation or organization shall not exceed twenty-five (25) in number.

3. Immediately prior to any solicitation of funds within the County, each solicitor, canvasser or caller shall present his or her identity card, issued by the Business License Department, to each person solicited and request each person solicited to read such identity card. Each solicitor, canvasser, or caller must inform each person solicited in clear language of the nature and purpose of the solicitation and the name and home or national office or headquarters of the firm, corporation or organization represented. Further, each solicitor, canvasser or caller must

---

1. Defendants have not questioned the status of the doctrine embraced by plaintiff's organization as a religion or religious belief protected by the first amendment.

inform each person solicited as to any minimum donation required for the acceptance of any merchandise, wares, goods or similar items given by each solicitor, canvasser or caller prior to such acceptance by each person solicited.

In general, these requirements are said to be overly broad and burdensome in light of the governmental purposes which they serve.

■ The applicable law is more easily stated than applied. All parties agree that plaintiff's first amendment solicitation activity is subject to such reasonable "time, place and manner" regulations as may be "necessary to further significant governmental interests". *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972); *Cox v. New Hampshire*, 312 U.S. 569, 575–76, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). Permissible regulation, however, must not be broader than is needed to protect such interests; rather, "[t]he breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960) (footnote omitted). Further, the regulation must be narrowly drawn so as to apprise those regulated of their duties under the law; it must not be unduly vague. *See, e. g., Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976).

The Supreme Court has consistently recognized that a local government may properly regulate soliciting and canvassing of the sort at issue here "to protect its citizens from crime and undue annoyance". *Hynes, supra*, at 616, 96 S.Ct. at 1759. As stated by Mr. Justice Black in *Martin v. Struthers*, 319 U.S. 141, 144, 63 S.Ct. 862, 864, 87 L.Ed. 1313 (1943) (footnotes omitted),

Ordinances of the sort now before us may be aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime. Constant callers, whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home as much as a neighborhood glue factory or railroad yard which zoning ordinances may prohibit. . . .

In addition, burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later. Crime prevention may thus be the purpose of regulatory ordinances.

Plaintiff does not take issue with these justifications for defendants' ordinance; their whole argument instead focuses upon whether the various portions of the county's regulatory effort go beyond what is necessary to vindicate its legitimate objectives.

■ The court finds no fault with defendants' limitation of solicitation to the hours from nine in the morning to six in the evening. Plaintiff's suggestion that this choice prevents members of the church from gaining access to many households altogether, as the hours coincide with the working hours of many individuals, ignores the fact that weekend solicitation is perfectly permissible. Furthermore, public solicitation of those individuals who are away from their homes is open to plaintiff and his fellow solicitors during the entire week. The hours chosen thus appear to the court to be a permissible accommodation of plaintiff's right to solicit and the county's interest in preserving the peaceful enjoyment of the home for its citizens. As for prevention of crime, plaintiff recognizes that darkness facilitates the commission of such; this appears to the court to be indisputably true, both in public and private places. While it is clear that the hours chosen by defendants do not precisely coincide with the daylight hours and as a result at certain times of the year prevent solicitation not conducted under cover of darkness, it would also appear to be clear that use of language barring solicitation during the "hours of darkness" or "after sunset" would import into defendants' ordinance the very vagueness which formed a basis for plaintiff's attack on defendants' prior law. Any choice of numbers will bear some appearance of arbitrariness by its very nature, but, if they choose to

legislate in this area, defendants must choose *some* hours in order to warn plaintiff of his obligations. Their present choice appears to the court to be within the area of a reasonable time regulation for the prevention of crime, as it provides warning and opens most of the day to plaintiff for his activities, while barring him from solicitation during the time when criminals could most easily masquerade as solicitors.

As previously quoted, the second portion of the ordinance which is now under attack provides that the "number of solicitors . . . for any single . . . organization shall not exceed twenty-five (25) in number." Plaintiff takes the position that, pursuant to this provision,

> 25 residential solicitors must be identified and receive identity cards, and that thereafter, no additional persons may solicit on behalf of such organization. Contrary to defendants' assertion, this provision does not regulate the total number of persons who are soliciting at any one time. Instead, its effect is that no more than 25 persons may register to solicit on behalf of one organization, regardless of the number actually engaged in the solicitation activity.

Plaintiff's Brief, at 13. Plaintiff does not object to use of the number 25 per se. He is instead concerned that, due to sickness or absence from the county, his church at certain times will not have a full 25 persons operating in the county and, under this provision, will not be able to substitute individuals to make up the full number for the ninety-day period of any one permit. Thus, assuming that the county has a legitimate interest in controlling the total number of solicitors for various organizations which operate within its boundaries, plaintiff appears to suggest that no purpose is served by not permitting it to substitute solicitors so as to constantly operate at full strength.

Defendants justify their number limitation by pointing to a need for the ability to identify solicitors so as to prevent fraud upon the public. In addition, as just indicated, the number is described as an attempt to control the total number of solicitors operating within the county, without regard to the particular organization represented. As for their particular ordinance, defendants appear to take issue with plaintiff's description of the limitation's effect. They assert that they have interpreted it to mean "25 at one time and enforced such accordingly." Defendants' Responsive Brief, at 2.

■ Reasonable limitations as to number are not improper in and of themselves. *See Wolin v. Port of New York Authority*, 392 F.2d 83, 94 (2d Cir.), *cert. denied* 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968). The court can readily agree with plaintiff, however, that there would appear to be no reason not to permit substitution of solicitors within that limited number by what would virtually amount to a "trade-in" of identity cards, as none of the purposes for the limitation which have been put forward would appear to be affected by such. But to go this far is not to conclude that the instant ordinance is invalid, as the provision of the ordinance now attacked does not on its face prohibit substitution. Nor is it vague; it simply does not address the matter.

■ Only if some other provision of the ordinance requires that the same 25 persons remain as solicitors throughout the life of a permit or if defendants in implementing this ordinance have enforced such a policy and refused substitution would the question raised by plaintiff appear to be presented. Conversely, if the ordinance does not speak to the question, and defendants have not refused a request for a substitution and trade-in of solicitors and identity cards, there would appear to be no controversy presented with respect to this provision. The court finds itself unable to resolve the issue at this time, however, as plaintiff has not addressed himself to the ordinance as a whole or as applied. In addition and more importantly, while defendants in their briefs have stated what their policy is, that policy has not been submitted to the court in terms of an affidavit or other competent evidentiary form. Accordingly, the court must DEFER the summary judgment mo-

tions on this point. The parties are DIRECTED to address themselves to the issues outlined within ten (10) days.

■ The last attack on the ordinance is easily resolved. Under its provisions, each solicitor must, upon approaching an individual to solicit his aid, present the individual with a county identity card and request that it be read. The person solicited must then be informed of the "nature and purpose" of the solicitation and the name and home or national headquarters of the organization represented by the solicitor. Following this must be information with respect to minimum donations. Defendants justify these requirements by arguing that they are necessary to permit those solicited to make an "informed contribution" and to prevent fraud. They assert that

> In a public solicitation many individuals may not have the opportunity to read the identity cards, as in the example of a person in an automobile. Furthermore, the blind and the illiterate may be encountered who would not be able to read the identity card, and would be helpless to know to whom and what they were being asked to contribute, absent the verbal dissemination of such information.

Defendants' Brief, at 7.

Plaintiff has not objected to the use of identity cards themselves and specifically "[does] not quarrel with any requirements that the person solicited be advised that the soliciting organization has properly registered with the County authorities, that identity cards have been issued in connection therewith, and that they are subject to inspection." Plaintiff's Brief, at 12. The court need not determine whether or not defendants can require more than this, such as a specific statement of identification from the solicitor, as it is clear that their present requirements go too far. Defendants' goals do not appear to be improper, although their notion of an informed public may embody a paternalistic attitude not

entirely consonant with first amendment law. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 770, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). But their methods of furthering these goals go beyond anything which can be said to be necessary. Solicitors are required to provide cards, request that they be read, and provide a further verbal explanation. It would appear to be beyond question that defendants can devise a less burdensome method by which plaintiff and his fellow-church members can identify themselves.[2] In this context, at least, some burden is on the individual solicited to protect himself when given initial information on which to act. While defendants' concern for those who suffer from some handicap, such as the blind and the illiterate, is laudable, it does not appear to be reasonable to conclude that all of the steps contained in this ordinance are required to protect such individuals from a possible fraud. Defendants' ordinance, in attempting to insure that certain information reaches the object of the solicitation, requires that a double dose of that information be administered. This does not appear to the court to be permissible, so that this section of the ordinance cannot stand.

Accordingly, plaintiff's motion for summary judgment is GRANTED with respect to the identification requirements of the ordinance, defendants' is GRANTED with respect to time requirements, and both motions are DEFERRED with respect to limitation of number of solicitors. The parties are DIRECTED to supplement their positions on the latter issue within ten (10) days.

2. Plaintiff's motion for an interim award of attorney's fees is grounded on the events which occurred at the outset of this lawsuit and resulted in passage of the ordinance now in dispute. The enactment of the ordinance is said to have been a direct result of this litigation, and plaintiff as a

---

**2.** The court notes in particular that the national headquarters disclosure seems to be particularly unjustifiable in an area where regulation must be carefully limited. It also appears that defendants' fraud concerns are to some extent provided for by a section of the ordinance which outlaws certain false representations.

result sees himself as a prevailing party in the initial phase of the case. Pursuant to 42 U.S.C. § 1988, plaintiff therefore requests an award of $2,630 as reasonable attorney's fees incurred incident to filing of the complaint.

 The relevant statute is, in pertinent part, virtually identical to the attorney's fee provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k); both provide for an award to a prevailing party. The standards for awards under both statutes are generally the same, *see Henderson v. Fort Worth Independent School District*, 574 F.2d 1210, 1212 (5th Cir.), *vacated on other grounds*, 584 F.2d 115 (5th Cir. 1978) (en banc), and no reason appears for drawing a distinction between them for purposes of interim awards of fees. Such awards, while permissible under Title VII cases, and hence under § 1988, should only be made, however, to a party which has prevailed on a portion of the case which "is sufficiently significant and discrete to be treated as a separate unit." *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir. 1974); *see also United States v. Allegheny-Ludlum Industries, Inc.*, 558 F.2d 742, 743–44 (5th Cir. 1977), *modified* 568 F.2d 1073 (5th Cir. 1978); *Smith v. University of North Carolina*, 47 U.S.L.W. 2498 (M.D.N.C.1979). Thus, a case will not be broken down to the point of permitting a recovery of attorney's fees for prevailing on a simple procedural motion, *Van Hoomissen, supra; Smith, supra*, so that a substantive prevailing party will not be required to subsidize a losing party's procedural victories. *Allegheny-Ludlum Industries, supra*, at 743. Nor should an unfair tactical advantage be given one party or the other under the guise of an award. *Smith, supra*. Finally, with regard to either a final or an interim award, "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." *Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977); *Howard v. Phelps*, 443 F.Supp. 374, 376 (E.D.La.1978).

 Judged against these standards, it appears to the court that plaintiff is clearly a prevailing party with respect to the original complaint in this case. Defendants do not contest that their enactment of the present ordinance was a direct result of the filing of plaintiff's complaint; nor could they seriously do so in light of the events which occurred subsequent to filing. While no order with respect to the original complaint was ever entered, that fact is not controlling under *Brown, supra*. Instead, defendants' actions in response to this suit are determinative. In addition, the controversy with respect to the original attack on defendants' regulation of solicitation has concluded; nothing further remains to be done or could be done in that phase of this case. Accordingly, the court concludes that plaintiff is a prevailing party as to the initial phase of this litigation and is entitled to the interim award requested.[3]

As noted, plaintiff requests the amount of $2,630. Counsel for plaintiff states by way of affidavit that he expended 42.5 hours in litigating the original complaint; these hours were billed at the rate of $60 per hour. In addition, four hours of travel time were involved and were billed at the rate of $25 per hour. Counsel recites that he attempted to resolve the problem of plaintiff's solicitation permit without filing a complaint but was unable to do so. After filing of the complaint, this phase of the case was concluded in roughly a week through actions outside of court, with the exception of the conference in chambers at which defendants' counsel requested a brief allowance of time for passage of a new ordinance.

---

**3.** The court notes defendants' suggestion that fees should not be awarded because plaintiff has continued to litigate after the case became "frivolous, unreasonable or groundless." *See Keown v. Storti*, 456 F.Supp. 232, 244 (E.D.Pa. 1978). This is a matter for consideration should defendants seek an award for litigation of the amended complaint, however. The contention would in any event appear to be without merit in light of the court's rulings on the pending summary judgment motions.

Consideration of the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974), leads the court to conclude that plaintiff's request is somewhat excessive. Without questioning in any way the capabilities of plaintiff's attorney or that the stated time was actually spent, it appears that research, miscellaneous activity and drafting of papers involved more time than they should have in light of what was ultimately filed. The court therefore will reduce the time claimed by some eight hours. In addition, the customary hourly rate awarded in this district is $50 per hour rather than $60. Finally, the court notes that the legal principles which control this case are not difficult as to concepts or research.

Accordingly, plaintiff's motion for an interim award of attorney's fees is GRANTED, and he is AWARDED the amount of $1,725.00, representing 32.5 hours compensated at the rate of $50 per hour and four hours of travel time at $25 per hour.

In summary, plaintiff's and defendants' cross-motions for summary judgment are each GRANTED in part, DENIED in part and DEFERRED in part. Ten (10) days are ALLOWED for submission of supplemental material with respect to the deferred portion of the motions, and the clerk is DIRECTED to resubmit this action in ten (10) days. Plaintiff's motion for an interim award of attorney's fees is GRANTED, and the amount of $1,725.00 is hereby AWARDED.

So ORDERED, this 29th day of March, 1979.

On Motion for Partial Reconsideration

This civil rights action is currently before the court on plaintiffs' motion for partial reconsideration of an order of this court filed on March 30, 1979.

Plaintiff Westfall is a member of the Holy Spirit Association for the Unification of World Christianity. He brought this action individually and on behalf of the members of his church in order to secure religious solicitation privileges in Clayton County, Georgia. Plaintiff's original complaint attacked certain licensing requirements of the Clayton County Code of Ordinances as violative of the first amendment when applied to him and other members of his church. Plaintiff moved for a temporary restraining order, on which the court postponed a ruling because defendants, apparently recognizing that their then-existing ordinance was constitutionally defective as applied, requested a period of approximately one week in which to draft and approve a replacement law. On September 5, 1978 defendants amended the Code of Ordinances to provide:

Soliciting or canvassing upon the public streets, areas or parks or calling from house to house in the County shall be subject to the following regulations:

1. All soliciting or canvassing upon the public streets, areas or parks or calling from house to house in the County shall only occur between the hours of 9:00 a. m. and 6:00 p. m.

2. The number of solicitors or canvassers or callers from house to house in the County for any single firm, corporation or organization shall not exceed twenty-five (25) in number.

3. Immediately prior to any solicitation of funds within the County, each solicitor, canvasser or caller shall present his or her identity card, issued by the Business License Department, to each person solicited and request each person solicited to read such identity card. Each solicitor, canvasser, or caller must inform each person solicited in clear language of the nature and purpose of the solicitation and the name and home or national office or headquarters of the firm, corporation or organization represented. Further, each solicitor, canvasser or caller must inform each person solicited as to any minimum donation required for the acceptance of any merchandise, wares, goods or similar items given by each solicitor, canvasser or called prior to such acceptance by each person solicited.

Plaintiff then attacked this new ordinance on the ground that it is overly broad and burdensome in light of the governmental interests that it purports to serve.

By orders of March 30, 1979 and May 21, 1979, the court upheld the provisions of the law restricting hours of solicitation from 9:00 a. m. to 6:00 p. m. and limiting the number of solicitors to 25 and struck down the portion of the law requiring each solicitor to perform an extensive identification procedure before requesting contributions. Plaintiff now moves that the court reconsider its earlier decision that the hours restriction provision of the ordinance is constitutionally sound.

 Although the legal principles that are applicable to this first amendment issue [1] are well established, "[a]djustment of the inevitable conflict between free speech and other interests is a problem as persistent as it is perplexing." *Niemotko v. Maryland,* 340 U.S. 268, 275, 71 S.Ct. 325, 329, 95 L.Ed. 267 (1951) (Frankfurter, J.) (concurring opinion). There is no question that reasonable restrictions upon the time, place, and manner of the exercise of first amendment rights may be imposed in furtherance of a legitimate governmental interest if that interest is unrelated to suppression of expression and is substantial in relation to the restrictions imposed, and if the restrictions are no greater than necessary or essential to the protection of governmental interests. *E. g., United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Verilli v. City of Concord,* 548 F.2d 262, 263–64 (9th Cir. 1977). The governmental interest advanced must be paramount, one of vital importance, and the government bears the burden of establishing the existence of such an interest. *Elrod v. Burns,* 427 U.S. 347, 362, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *see Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A certain amount of inconvenience, discomfort, litter, or other incidental effects of the exercise of first amendment rights is not a sufficient justification for restricting those rights. *International Society for Krishna Consciousness,*

*Inc. v. Bowen,* 456 F.Supp. 437, 444 (S.D. Ind.1978), *aff'd,* 600 F.2d 667 (7th Cir. 1979); *see Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. Irvington,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). Even where sufficiently strong governmental interests exist to justify some restriction, "a statute may regulate too much and in its zeal to protect [those] interests infringe on protected conduct. Under such circumstances, the statute is considered overbroad." *International Society for Krishna Consciousness v. Evans,* 440 F.Supp. 414, 423 (S.D.Ohio 1977).

In its order dated March 30, 1979, the court upheld the hours restriction challenged by plaintiff as overbroad. Citing *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), and *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), in which the United States Supreme Court recognized that a local government may properly regulate soliciting and canvassing to protect its citizens from crime and undue annoyance, the court concluded that "[t]he hours chosen . . . appear to the court to be a permissible accommodation of plaintiff's right to solicit and the county's interest in preserving the peaceful enjoyment of the home for its citizens." Order of March 30, 1979 at 865.

In its earlier order, however, the court neglected to pay sufficient attention to the fact that the ordinance here in question actually places restrictions on two separate types of speech: the soliciting and convassing upon public streets and in public areas and parks, and calling from house to house. Any attempted regulation of the dissemination of ideas in public places must be carefully drawn so as not to abridge the fundamental constitutional rights of free speech and expression. In *Hague v. CIO,* 307 U.S. 496, 515–16, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939), Justice Roberts stated:

---

1. Distribution of literature and solicitation of funds incident to the propagation of doctrines of a religion are protected by the first amendment. *Murdock v. Pennsylvania,* 319 U.S. 105, 109, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). And

conduct such as that plaintiff claims to be engaged in has repeatedly been held to be an exercise of religious freedom. *See, e. g., United States v. Silberman,* 464 F.Supp. 866, 872 (M.D. Fla.1979).

Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. [The privilege] . . . is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

*Accord, Grayned v. City of Rockford, supra,* 408 U.S. at 115, 92 S.Ct. 2294; *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 152, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Schneider v. Irvington, supra,* 308 U.S. at 162, 60 S.Ct. 146.

Defendants' ordinance represents a complete abridgement of the right of plaintiff to propagate the doctrines of his religion in *any* public forum, regardless of any other circumstances, between the hours of 6:00 p. m. and 9:00 a. m. The court agrees with plaintiff that this blanket prohibition on the use of the public streets, areas, and parks for solicitation between these hours is overbroad. Accordingly, the court GRANTS plaintiff's motion to reconsider the validity of the ordinance, inasmuch as it places a comprehensive limitation on the hours during which plaintiff and others may exercise their right of free speech in public places. For this reason, the ordinance cannot pass constitutional muster. Defendants here have not shown that the concededly legitimate state interests advanced in support of the ordinance—the protection of citizens from crime and undue annoyance—could not be equally well served by a less restrictive means than a total prohibition on expression in public places at certain hours of the day.

The court's ruling on this issue comports with the standards set forth by the Supreme Court in *Grayned v. City of Rockford, supra.* *Grayned* involved a challenge to an antinoise ordinance of the city of Rockford, Illinois prohibiting the making of any noise or diversion while on public or private grounds adjacent to any school that is in session which tends to disturb the peace or good order of the school. The Court, in upholding the validity of the ordinance, stated that "[t]he nature of a place, 'the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable.'" *Id.* at 116, 92 S.Ct. at 2303 (footnote omitted), *quoting* Wright, *The Constitution on the Campus,* 22 Vand.L.Rev. 1027, 1042 (1969). The Court continued:

> [W]e do not think that Rockford's ordinance is an unconstitutional regulation of activity around a school. . . . It is narrowly tailored to further Rockford's compelling interest in having an undisrupted school session conducive to the students' learning, and does not unnecessarily interfere with First Amendment rights. Far from having an impermissibly broad prophylactic ordinance, Rockford punishes only conduct which disrupts or is about to disrupt normal school activities.

*Id.* at 117, 119, 92 S.Ct. at 2304, 2305. The ordinance under scrutiny in the instant case, inasmuch as it restricts freedom of expression in public places, must fail precisely because it is "an impermissibly broad prophylactic ordinance"; it punishes exercises of expression carried on between 6:00 p. m. and 9:00 a. m. regardless of whether they disrupt or are about to disrupt normal activities.

The court should point out that its ruling here is simply that the ordinance is overbroad. The court continues to adhere to the view expressed in its March 30, 1979 order that the County may place reasonable hours restrictions on door-to-door calling upon and solicitation of private residences. The interests sought to be protected by the County—preservation of the peaceful enjoyment of the home and prevention of

crime—are sufficiently weighty to justify restricting intrusions into private dwellings more or less to daylight hours.[2] But any such regulation must more narrowly circumscribe the places to which such hours restrictions apply than does the County's present ordinance.

In summary, plaintiff's motion for partial reconsideration of the court's order of March 30, 1979 is GRANTED.

So ORDERED, this 26th day of September, 1979.

---

2. There may even be certain public areas on which the County could place hours restrictions. But any such regulation would have to depend on the nature of the place and the nature of the activities normally carried on there.