Alphonso McNEIL, Plaintiff,

v.

Calvin P. OGBURN et al., Defendants.

No. 79–964.

United States District Court,
N. D. Florida,
Tallahassee Division.

Feb. 3, 1981.

Jerry G. Traynham, Tallahassee, Fla., for plaintiff.

Gary M. Ketchum, Tallahassee, Fla., for Tallahassee Housing Authority, Calvin P. Ogburn, and Gene Love.

James R. English, Tallahassee, Fla., for City of Tallahassee, Daniel A. Kleman.

## ORDER AWARDING ATTORNEY'S FEES

HIGBY, District Judge.

The merits of this civil rights lawsuit were reasonably and amicably resolved by settlement. Unfortunately the attorney's fee dispute was not. All sides agree the Plaintiff prevailed and under Title 42, United States Code, Section 1988, is entitled to attorney's fees. I have considered the affidavits, testimony, and other evidence presented. My analysis, which follows, uses the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Twelve factors should be considered. They are discussed below.

1. *The time and labor required.* This is the most disputed factor. Jerry Traynham, the Plaintiff's attorney, swears he spent 171.50 hours on this case; his partner, Ben Patterson, expended 6.50 hours; an associate, Ed Stafman, spent 1.75 hours. In addition Traynham's law clerk or paralegal, Robert Guttman, worked 31 hours on this case. The lawyer time Plaintiff's attorney claims was used in this case totals 179.75 hours. Speaking with some restraint, Defendants suggest that much time could only have been accrued in a highly inefficient office. To support their position they point out that Mr. Traynham and Mr. Patterson sought payment for 218.25 hours in *Marion v. Barrier*, TCA 78–0739, a similar lawsuit, which included a three-day trial. In contrast this case settled before cross motions for summary judgment were ruled upon. I agree with the Defendants that the hours claimed by Plaintiff's counsel are excessive.

At the outset the accuracy of Mr. Traynham's affidavit is cast in doubt. In his affidavit he swears 7.50 hours were spent on September 14, 1979, "[u]pdating research in light of new somewhat adverse rulings." On September 14, 1979, there had been no rulings in this case. The only documents filed were the complaint and the Marshal's return. Those 7.50 hours will not be compensated. Another block of research time

will not be compensated for similar reasons. The affidavit reports 8.50 hours spent in "[a]dditional research in light of pretrial conference." The pre-trial conference lasted 20 minutes, and nothing exceptional occurred. The parties informed me of their belief the case could be disposed of, at least partially, by summary judgment, and I approved their request to file cross motions. Developments at the conference in fact eased Plaintiff's lawyer's task. I informed the parties of a recent case which did away with several affirmative defenses, and I struck those defenses.

With those hours disallowed 155.5 of Traynham's claimed hours remain. That is still far too much for this case. Much of the time claimed is allocated to research and writing. Traynham was assisted by an unusual law clerk, Robert Guttman, a former law professor at the University of Florida. According to Guttman's affidavit he spent 31 hours researching and drafting pleadings for this lawsuit. Thirty-one hours was about all the research and writing time needed. Plaintiff filed only four significant pleadings: the complaint, a pre-trial memorandum on disputed issues of law, a memorandum in support of the motion for summary judgment, and a response to the Defendants' summary judgment motions. Plaintiff's pre-trial memorandum and summary judgment memorandum were duplicative. Both dealt with the main issue in dispute, the Plaintiff's property right in his employment. One example of the duplication is the fact that all but eight of the more than forty authorities cited in the summary judgment motion were also cited in the pre-trial memorandum. And most of the authorities cited in both memoranda were black letter law in the civil rights field or cases Plaintiff's attorney had handled.

Despite the routineness of this case, its single issue focus and the lack of indication in the pleadings and evidence of extensive research, Traynham claims at least 51.50 hours of research in addition to Guttman's 31 hours and 11.5 hours spent conferring with Guttman. The vagueness of Traynham's affidavit makes determining exactly how much time was spent on research a mystic task. For example, on January 18, 1980, the affidavit reports Traynham spent 9.25 hours on "[t]elephone conferences, drafting pre-trial stipulation, re-reading depositions, additional research." Nothing indicates who the conferences were with, what they were about, or how much of the 9.25 hours they consumed. Two hours are claimed for "[r]eading new cases" which sounds like routine advance sheet reading, not work attributable to this case. The vagueness of Traynham's affidavit and the claims made not substantiated by the record make the affidavit of little use. Like Judge Wollenberg in *Waters v. Heublein, Inc.*, 485 F.Supp. 110 (N.D.Cal.1979), I find the attorney's time records of minimal use and have serious doubts about their accuracy. Consequently I must calculate the time spent by relying upon the record and my knowledge of the law as well as the evidence.

All of Guttman's research and writing time will be compensated, as will Traynham's time conferring with Guttman. Traynham will be allowed seven hours for his research and writing. That is all that would be required in light of the time spent by Guttman, Guttman's unusual qualifications, the issues involved, and the pleadings filed.

The affidavit's vagueness is not limited to time spent on research and writing. "Telephone conferences" account for 12.25 hours of the attorney time claimed. That description is simply too vague to support payment for the time. Other descriptions in Traynham's affidavit are equally uninformative. For example: "Preparation of case materials, correspondence"—6.5 hours; "Telephone conferences, work on summary judgment motion"—2.0 hours; "Conferences with English and Ketchum, conference with Guttman, preparation of materials"—6.75 hours; "Correspondence"—.50 hours. Again I must rely upon my knowledge of this area of the law and my 15 years of trial experience as well as the evidence to arrive upon a reasonable number of hours to base an award of attorney's fees. *See, Westfall v. Board of County Commissioners of Clayton County*, 477 F.Supp. 862 (N.D.Ga.1979).

I find that Traynham's reasonably compensable time spent in work other than research, writing, and conferences with Guttman totals 50 hours.

The claims for Patterson's and Stafman's time are reasonable and will be accepted.

Plaintiff's attorney's supplemental affidavit regarding time spent on this fee dispute also suffers from vagueness. He claims 10.50 hours. "Telephone conference" and "correspondence" account for four hours of that time. Proof of those four hours is insufficient to justify compensation. Mr. Traynham will be compensated for six hours spent on the fee dispute.

I find the total amount of time reasonably spent by Plaintiff's attorney and his firm in this case is as follows:

```
Mr. Traynham  -  74.50 hours
Mr. Patterson -   6.50 hours
Mr. Stafman   -   1.75 hours
Mr. Guttman   -  31.00 hours
```

2. *Novelty and difficulty of the questions.* This was not a complicated case and no novel or complicated legal issues were involved. Both sides have made much of the effect of *Glenn v. Newman*, 614 F.2d 467 (5th Cir. 1980). *Glenn v. Newman* did not make new law. It simply applied *United Steel Workers v. University of Alabama*, 599 F.2d 56 (5th Cir. 1979), to personnel regulations similar to the regulations involved in this case. There was nothing unique about this lawsuit. It was a plain old-fashioned firing case.

3. *Skill required.* This was routine civil rights litigation with no particularly difficult or unusual problems. Knowledge of civil rights law was needed. Plaintiff's lawyer's fee takes his experience in the field into account.

4. *Preclusion of other employment.* This factor is neutral. Accepting this case did not affect Plaintiff's lawyer's opportunities to handle other litigation.

5. *Customary fee.* I have considered evidence from both sides on the customary fee for this sort of litigation. I am also familiar with awards in similar cases in this district. Traynham's fee will be calculated at $75.00 per hour, Patterson's at $75.00 per hour, and Stafman's at $60.00 per hour. Plaintiff's attorney will be compensated for Guttman's time at the rate he paid for it, $33.33 per hour. *See, Jones v. Armstrong Cork Co.*, 630 F.2d 324 (5th Cir. 1980), n. 1.

6. *Fixed or contingent fee.* Plaintiff's lawyer took this case on a contingent fee basis. He was to receive one-third of any recovery. Plaintiff received $4,500.00, representing back pay. Under the fee agreement the Plaintiff's lawyer would receive $1,500.00. This is a low figure. Realistically, however, I believe the attorney was expecting more than that if he prevailed because he is well aware of the right to attorney's fees in civil rights litigation.

Plaintiff's attorney felt he had a 50–50 chance of winning. I disagree. From the outset there was a high probability of success. This case involved a claim for denial of due process in discharge. There was no real dispute over the inadequacy of the process offered. The only disputed issue, the Plaintiff's property interest in his employment was a matter of law, discernible from the regulations and rather clearly present. Although the case was taken on a contingent basis, the contingency does not justify enhancing the fee.

7. *Time limitations.* No unusual time limitations were involved.

8. *Amount involved and result obtained.* Plaintiff recovered $4,500.00 in back wages and had his employment record cleared. He did not get reinstated as he sought. Although his lawyer claims the Plaintiff found a better job, the abandonment of the demand for reemployment was an important factor in Defendants' decision to settle. The result obtained was, therefore, beneficial but not a complete victory. This limited success is taken into account. *See, Johnson v. Nordstrom Larpenteur Agency, Inc.*, 623 F.2d 1279 (8th Cir. 1980).

9. *Experience, reputation, and ability of attorneys.* The Plaintiff's attorney and his firm specialize in civil rights litigation. Their expertise is reflected in the hourly rate used to determine the fee.

10. *Undesirability of the case.* This case was run-of-the-mill. It was not particularly desirable or undesirable. This factor is neutral.

11. *Nature and length of relationship with client.* Mr. McNeil was a casual, one-time client. Such a client relationship is typical in the Plaintiff's lawyer's area of specialization, and the absence of any return business is therefore not very significant.

12. *Awards in similar cases.* I have considered a number of attorney fee awards in this district.

After considering all these factors, fees are awarded as follows:

| | | | |
|---|---|---|---|
| Mr. Traynham | $75.00 per hour | 74.5 hours | $5,587.50 |
| Mr. Patterson | $75.00 per hour | 6.5 hours | 487.50 |
| Mr. Stafman | $60.00 per hour | 1.75 hours | 105.00 |
| Mr. Guttman | $33.33 per hour | 31.0 hours | 1,033.23 |
| Total award | ---------------------- | | $7,213.23 |