ISKCON, INC., Baltimore Chapter and Charles Pfeiffer, Plaintiffs,

v.

William R. SCHMIDT, Jr., Superintendent, Department of Recreation and Parks and Mayor & City Council of Baltimore, Defendants.

Civ. No. H–80–2244.

United States District Court,
D. Maryland.

Oct. 13, 1981.

---

C. Christopher Brown, Baltimore, Md., for plaintiffs.

Benjamin L. Brown, City Sol., and William R. Phelan, Jr., Asst. City Sol., Baltimore, Md., for defendants.

## OPINION

ALEXANDER HARVEY, II, District Judge:

Presently before the Court in this civil action are cross-motions for summary judgment. Plaintiffs are the Baltimore Chapter of ISKCON (the International Society for Krishna Consciousness), Inc., a religious organization, and Charles Pfeiffer, its President. Plaintiffs have brought this action under 42 U.S.C. § 1983, challenging on their face the constitutionality of certain Baltimore City public park regulations which allegedly infringe their First Amendment rights.

Named as defendants are William R. Schmidt, Jr., Superintendent of the Baltimore City Department of Recreation and Parks, and the Mayor and City Council of Baltimore. The challenged regulations were promulgated under authority of a City Ordinance and are administered by defendant Schmidt.

Members of ISKCON adhere to the faith of Krishna Consciousness. This faith compels them to perform Sankirtan, a ritual consisting of chanting, distributing religious literature and soliciting funds. The chanting alone is called "Nagar Kirtan," which is typically conducted by a group of no more than fifteen devotees walking in single or double file. Plaintiffs have engaged in religious chanting in Baltimore City on public

sidewalks for several years. Plaintiffs would like to perform this ritual in the public areas of the Inner Harbor, a park under the jurisdiction of defendant Schmidt, and they have alleged that certain regulations of the City prevent them from so exercising their First Amendment rights. Accordingly, they seek a declaration of the invalidity of these regulations and an injunction against their enforcement.

The parties have submitted memoranda of law and affidavits, and oral argument has been heard at a hearing in open court. Summary judgment is appropriate in this case because there are no disputed issues of material fact. Rule 56, F.R.Civ.P. Only questions of law are before the Court. For the reasons to be stated, this Court concludes that the challenged regulations are unconstitutional.

The challenged regulations are Rules 4 and 46 of the Rules and Regulations of the Department of Recreation and Parks. Rule 4 provides as follows:

*Soliciting*—No person shall solicit money, subscriptions, alms or contributions for any purpose in any park or on any property under the jurisdiction of the Board of Recreation and Parks until a permit shall be obtained.

(a) An application for a permit to solicit shall be received by the Superintendent of Parks or the Superintendent of Recreation or their authorized representative, as the case may be, at least four, (4) days in advance of the proposed date of the solicitation and shall contain the following information:

The name and address of the person, organization, or other legal entity seeking the said permit, the date on which said solicitation is intended, the purpose for which funds are being solicited, the time of day and place of said solicitation, the number of solicitors and their names and addresses.

(b) Whenever in the judgment of the Superintendent of Parks or the Superintendent of Recreation or their authorized representative, as the case may be, the issuance of a permit to solicit in any particular place or at any particular time will have any detrimental effect, when considered in relation to the comfort and convenience upon the public in general; upon vehicular and pedestrian traffic; recreational activities; the operating or functioning of stores, offices or other places of business; or the peace and good order of the residents (any or all of which are located in the vicinity of the place where any of the aforementioned soliciting is to be held) or any combination thereof, then the Superintendent of Parks or the Superintendent of Recreation, or their authorized representative, as the case may be, shall have the right to refuse the requested permit and thereupon may indicate alternative times and places for consideration and selection by the applicant. After denial of a permit, the applicant may appeal to the Board of Recreation and Parks in accordance with the procedures hereinafter set forth in Rule 46(d) of the Rules and Regulations.

Rule 46 provides:

*Public Events*—No person, organization or other legal entity shall conduct, operate, present or manage any public event in or on any property under the jurisdiction of the Board of Recreation and Parks until a permit shall be obtained. Permits for amateur sports, and permits for musical, recreational and athletic activities sponsored by the Department of Education, Bureau of Recreation, Bureau of Parks or Bureau of Music, shall be issued routinely by and through designated staff representatives of the Board. The application for permits for other activities and events shall be filed as hereinafter provided and shall contain the following information: the name and address of the person or persons, organization or other legal entity seeking the said permit, the nature of the event, the particular location under the jurisdiction of the Board of Recreation and Parks where the event is to be held or staged, the date or dates and hours requested, and the names and addresses of all persons who will speak at said public event.

a. An application for a permit to conduct, operate, present or manage a contest, exhibit, dramatic performance, spectacle, play, motion picture, radio or television program, fair, circus, show or a band, choir, glee club or orchestra concert, or any similar event, shall be filed with the Superintendent of Parks or the Superintendent of Recreation, who is empowered to issue permits, at least ten (10) days in advance of the proposed date of the event.

b. An application for a permit to conduct, operate, present, or manage a public meeting, assembly, or parade, including, but not limited to, a drill, maneuver, ceremony, address, speech, harangue or political meeting, shall be received by the Superintendent of Parks or the Superintendent of Recreation or their authorized representative, as the case may be, at least four (4) days in advance of the proposed date of the event.

c. The Superintendent of Parks or the Superintendent of Recreation or their authorized representative, as the case may be, may issue a permit to hold a public meeting or assembly or parade at any location under the jurisdiction of the Board of Recreation and Parks if no assembly, parade or recreational activity, including, but not limited to, the events listed in Paragraph a. hereof, shall have been authorized or scheduled for the time and place requested by the applicant, except as provided in Paragraph d. hereof.

d. Whenever in the judgment of the Superintendent of Parks or the Superintendent of Recreation or their authorized representative, as the case may be, the issuance of a permit to hold any of the events mentioned in Paragraph b. hereof at any particular place or at any particular time will have any detrimental effect, when considered in relation to the comfort, convenience, safety, welfare and order of the public generally, upon vehicular and pedestrian traffic, recreational activity, the operation or functioning of stores, offices or other places of business, or the peace and good order of the residents, (any or all of which are located in the vicinity of the place where any of the aforementioned events are to be held) or any combination thereof, then the Superintendent of Parks or the Superintendent of Recreation or their authorized representative, as the case may be, shall have the right to refuse to issue the requested permit and thereupon may indicate alternative times and places for consideration and selection by the applicant. After denial of a permit, the applicant may apply for a hearing within forty-eight (48) hours to the Director of Recreation and Parks by filing an appeal with the Executive Secretary of the Board, or his representative, who shall thereupon immediately notify the Director of Recreation and Parks; and upon such notification, the Director or, in his absence, the Executive Secretary shall meet promptly for the purpose of acting thereon. The said Director, or Executive Secretary, after affording all parties an opportunity for a full hearing, which shall include a recording of all proceedings by a court stenographer, may reverse, affirm, or modify in any regard the determination of the Superintendent of Parks or the Superintendent of Recreation, or their authorized representative, as the case may be. An appeal from such action of the Director or the Executive Secretary may be taken within forty-eight (48) hours to the Board of Recreation and Parks by filing a notice of appeal with the Executive Secretary or his representative, who shall thereupon immediately notify the members of the Board; and upon such notification, the Board shall meet promptly for the purpose of acting thereon. Upon such appeal, the said Board, after reviewing the recording of testimony of the hearing and affording the parties to present oral arguments based on such testimony, shall make a final determination which may reverse, affirm or modify in any regard the determination of the Director or Executive Secretary. The Executive Secretary shall promptly notify the applicant of the determination of the Board.

Certain issues which were initially raised in this case have now been resolved by the parties. Plaintiffs do not contest the requirement that they must obtain a permit before soliciting. Defendants for their part concede that neither Rule 4 nor Rule 46 requires plaintiffs to secure a permit to distribute free literature or to speak individually to other park patrons. Furthermore, defendants concede that Rule 46 does not require all devotees who take part in Nagar Kirtan to give their names and addresses.

Plaintiffs' remaining arguments are (1) that Rule 46 violates the First Amendment by requiring plaintiffs to secure a permit for religious chanting; (2) that both Rules 4 and 46 violate the First Amendment by requiring plaintiffs to apply for a permit either four days in advance of any solicitation or ten days in advance of religious chanting; and (3) that both Rules 4 and 46 violate the First Amendment by failing to include adequate procedural safeguards as required by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In response, defendants argue that they have a compelling interest in regulating the time, place and manner of the use of the Inner Harbor in order to protect the safety and convenience of its users, the flow of traffic, the operation of surrounding businesses, and the peace and good order of area residents. They assert that the permit requirements and their attendant delays serve these interests. Finally, they contend that further procedural safeguards beyond the administrative appeals provided for in Rules 4 and 46 are unnecessary as the regulations are directed at solicitation and the conduct of public events, not at the content of pure speech.

■ In this particular case, plaintiffs are challenging defendants' regulations on their face. Accordingly, they need not necessarily show that their own conduct is protected. They may prevail if the regulations would be unconstitutional as applied to substantial numbers of others not before the Court. *See Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977); *Broadrick v. Oklahoma*, 413 U.S. 601, 611–15, 93 S.Ct. 2908, 2915–17, 37 L.Ed.2d 830 (1973).

■ The basic principles applicable to this case are familiar. Public parks, including public areas of the Inner Harbor, are public forums. Nonetheless, the time, place and manner of their use for activities protected by the First Amendment may be regulated in the interest of making the forum open to as many as possible. *E. g., Hague v. Committee for Industrial Organization*, 307 U.S. 496, 515–16, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939). A permit requirement can be a valid means of implementing time, place and manner restrictions. *See Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). However, to be valid, a permit requirement may not vest unfettered discretion in the official charged with the issuance of permits. *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). Standards must be provided which are clear and limited to the proper regulation of public places. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

■ Where a permit may be required, some advance application may also be required to give the issuing agency time to consider the application, at least in cases where advance notice is possible. *See Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968). However, where protected activity is involved, this delay should be only as long as is absolutely necessary to allow a decision to be made, for "the regulation must be narrowly tailored to further the State's legitimate interests." *Grayned v. City of Rockford*, 408 U.S. 104, 116–17, 92 S.Ct. 2294, 2303–04, 33 L.Ed.2d 222 (1972). The least restrictive alternative for promoting local safety and welfare must be employed.[1]

---

1. In drawing regulations which are the least restrictive method of furthering the City's objectives, the City has a particularly difficult task insofar as public areas of the Inner Harbor are concerned. Plaintiffs' religious activities are not prohibited or regulated on public sidewalks. However, public areas of the Inner Harbor at many locations abut on public side-

*Hickory Fire Fighters Association v. City of Hickory*, 656 F.2d 917 (4th Cir. 1981).

▆ Finally, and most importantly for this case, a system of prior restraint upon protected activity must provide adequate procedural safeguards. *Freedman v. Maryland, supra*. Such safeguards should include prompt judicial review, with the regulating party bearing the burden of seeking judicial review and of establishing that the activity may properly be regulated. *Freedman v. Maryland, supra*.

▆ Performance of the ritual of Sankirtan by members of ISKCON has been recognized as activity protected by the First Amendment. *ISKCON v. Barber*, 650 F.2d 430, 433 (2d Cir. 1981). Thus, the principles of the cases cited herein are properly applicable to the religious chantings of plaintiffs in public areas of the Inner Harbor.

It is not necessary in this case to address plaintiffs' first two arguments. On the record here, this Court finds and concludes that the challenged regulations are facially unconstitutional because they fail to provide adequate procedural safeguards for the regulation of plaintiffs' protected activities and speech. Accordingly, questions concerning the constitutionality of requiring a permit for activities such as plaintiffs' and of requiring a short advance notice before granting such a permit need not be addressed.[2]

Before the plaintiffs may engage in religious chanting in public areas of the Inner Harbor, they must secure a permit at least ten days before the activity occurs. In other words, permission must be secured in advance from officials of the City of Baltimore before plaintiffs may exercise their First Amendment rights. A regulation of this sort is a type of prior restraint which must include proper safeguards if it is to be found constitutionally permissible.

The principle that a system of prior restraint requires clearly defined procedural safeguards is best expressed in *Freedman v. Maryland, supra*. In that case, the Supreme Court emphasized that any system of prior restraints on forms of expression comes to the Court bearing a heavy presumption against its constitutional validity. 380 U.S. at 57, 85 S.Ct. at 738. There is the danger that the censor may well be less responsive than a court to constitutionally protected interests in free expression, and if it is made unduly onerous by reason of delays for an applicant for a permit to seek judicial review, the censor's determination may in practice be final. *Id.* at 57–58, 85 S.Ct. at 738–39. For these reasons, the Supreme Court established in *Freedman* specific procedural safeguards to obviate the constitutional dangers posed by a governmental body which would exercise prior restraint over freedom of expression. First, the burden of proving that the speech is unprotected lies with the censor. *Id.* at 58, 85 S.Ct. at 738–39. Secondly, the regulation must require that the censor will within a specified brief period either issue a license or go to court to restrain the speech. *Id.* at 59, 85 S.Ct. at 739. Finally, the procedure adopted must assure a prompt final judicial decision to minimize the deterrent effect of an interim and possibly erroneous denial of the application. Id. at 59, 85 S.Ct. at 739.

Although *Freedman* involved motion picture censorship, many recent cases have applied its principles in striking down ordinances requiring ISKCON members to obtain permits before chanting or soliciting. *E. g., ISKCON v. Rochford*, 585 F.2d 263 (7th Cir. 1978); *Fernandes v. Limmer*, 465

---

walks. Thus, under existing regulations, plaintiffs may perform Sankirtan on the sidewalks adjoining the Inner Harbor without securing a permit, but when they step into the unmarked public area which constitutes the "park," a permit is necessary.

2. A review of the cases cited herein suggests that activities of the plaintiffs in the public areas of the Inner Harbor might well be constitutionally regulated by properly drawn regulations. However, besides the deficiencies noted in this Opinion, the present regulations also appear to vest unlimited discretion in the issuing official who may deny a permit for soliciting if the activity in question "will have any detrimental effect * * * upon the public in general."

F.Supp. 493 (N.D.Tex.1979); *ISKCON v. Bowen,* 456 F.Supp. 437 (S.D.Ind.1978), aff'd, 600 F.2d 667 (7th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979); *ISKCON v. Kearnes,* 454 F.Supp. 116 (E.D.Cal.1978); *ISKCON v. Griffin,* 437 F.Supp. 666 (W.D.Pa.1977). *See also United States v. Silberman,* 464 F.Supp. 866 (M.D.Fla.1979) (dictum). These cases are persuasive authority for this Court's conclusion that *Freedman* applies to prior restraints of the sort involved in this case.

When the challenged regulations are considered under *Freedman,* it is clear that they are constitutionally invalid. If in the judgment of the City's Superintendent of Parks or the City's Superintendent of Recreation (or in the judgment of some other official authorized to act by either one of these individuals), the plaintiffs' religious chanting would have a detrimental effect upon various other activities in the park areas, the requested permit may be denied. After denial, an applicant like plaintiffs may apply for a hearing within 48 hours to the Director of Recreation and Parks. The Director or, in his absence, the Executive Secretary, is then required to hold a hearing and render a decision reversing, affirming or modifying the determination made by the Superintendent of Parks or the Superintendent of Recreation.[3] An appeal from action taken by the Director may be taken within 48 hours to the Board of Recreation and Parks. The Board is then empowered to make "a final determination" on the issue.

Thus, a two-tiered administrative appeal procedure is provided, and although these appeals are to be heard promptly, no specific time limits are set for rendering the decisions. The party seeking a permit bears the burden of pursuing the appeal and the burden of showing his entitlement to the permit. No provision whatsoever exists in the regulations for judicial review of the decision of the Board of Recreation and Parks. Moreover, there is no requirement that the City has the burden of applying to a court to enjoin the activity for which a permit was sought. Under these regulations, any review by a Maryland state court would have to be upon the suit of an applicant challenging the administrative decision. Clearly, these procedures are inadequate under *Freedman.*

That *Freedman* has been applied in only modified form in certain types of cases, *e. g., Quarterman v. Byrd,* 453 F.2d 54, 60 (4th Cir. 1971) (distribution of literature in secondary schools), would not change the result here. In this case, plaintiffs are challenging the regulations on their face. There is at least one very substantial category of persons subject to the regulations, namely individuals desiring to engage in political speech in the Inner Harbor. Activity of this sort without a permit is clearly proscribed by the regulations, and the City's attempt to restrain in advance political speech in the Inner Harbor assuredly warrants the full range of the *Freedman* protections. The absence of these protections in the regulations renders them unconstitutional on their face, even were this Court to conclude, as it has not, that *Freedman* should be applied here only in modified form.

Recently the Supreme Court decided the case of *Heffron v. ISKCON,* —— U.S. ——, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).[4] In *Heffron,* the Court upheld the Minnesota State Fair's "booth rule," which required Krishna devotees to carry out their solicitation and distribution of literature from a fixed booth. The Court there recognized once again the important principle that even activities protected by the First Amendment are subject to reasonable restrictions as to time, place and manner where those are necessary to serve a significant governmental interest. The Supreme Court in its opinion also noted the importance of a governmental interest in crowd control.

---

**3.** The regulations contain no time limit for the making of this decision by the Director.

**4.** *Heffron* appears to have overruled the Fourth Circuit's recent decision in *Edwards v. Maryland State Fair and Agricultural Society, Inc.,* 628 F.2d 282 (4th Cir. 1980).

**1310**

However, there are marked differences between the facts in the present case and in *Heffron*. The Inner Harbor public areas are continuously open to the public from the adjoining streets and sidewalks, unlike a state fair which is a temporary event, enclosed within a well-defined area. Thus, the Inner Harbor is much more similar to the archetypical public forum, the public street. *Heffron* stands for the proposition that courts cannot ignore the important governmental interest in crowd control and lends support to this Court's observation that plaintiffs' activities might well be regulated by a properly drawn ordinance. However, there is nothing in *Heffron* to suggest that the *Freedman* principles are inapplicable in the present case, since the question of the proper procedural safeguards to be included in a governmental regulation imposing a prior restraint on protected activity was not before the Supreme Court in that recent case. *Heffron* in no way undermines the well accepted principle that adequate procedural safeguards must be included in any system of prior restraint. The regulations challenged here are unconstitutional because of the absence of such safeguards.

For the reasons stated, Rules 4 and 46 of the Rules and Regulations of the Department of Recreation and Parks of the City of Baltimore are hereby declared to be unconstitutional. Accordingly, plaintiffs' motion for summary judgment will be granted and defendants' motion for summary judgment will be denied. Plaintiffs are entitled to an injunction prohibiting defendants from enforcing these Rules. Counsel should meet and submit to the Court an appropriate Order.