INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC. and Romapada Das, on behalf of themselves and all members of the International Society for Krishna Consciousness, Inc., Plaintiffs,

v.

John B. McAVEY, Deputy Director, World Trade Center Department, the Port Authority of New York and New Jersey, Individually and in his official capacity, Walter Lee, Superintendent of the Port Authority of New York and New Jersey/Port Authority Trans-Hudson Corporation Police, Individually and in his official capacity and Frank Gorman, Director of Terminal Operations, Port Authority Trans-Hudson Corporation, Defendants.

No. 77 Civ. 5014.

United States District Court, S. D. New York.

April 28, 1978.

Jeremiah S. Gutman, Eugene N. Harley, Levy, Gutman, Goldberg & Kaplan, New York City, for plaintiffs; Donna Glasgow, New York City, of counsel.

Patrick J. Falvey, New York City, for defendants; Joseph Lesser, Arthur P. Berg, Philip Maurer, New York City, Benjamin R. DeCosta, St. Albans, of counsel.

OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs, the International Society for Krishna Consciousness, Inc. ("ISKCON") and Romapada das, president of the New York City Temple of ISKCON, have moved for a preliminary injunction to enjoin defendants, supervisory personnel of the Port Authority of New York and New Jersey, from enforcing certain regulations which limit the number of ISKCON devotees who may practice an alleged religious ceremony of ISKCON called Sankirtan, in the World Trade Center complex in New York City. The regulations further limit the times and places where devotees may perform their religious ceremony. Plaintiffs assert that the regulations constitute an unconstitutional interference with their first amendment rights. Defendants, on the other hand, argue that the regulations strike a constitutional balance between plaintiffs' first amendment rights and the public's need for a safe and orderly thoroughfare.

A hearing was held on the motion on January 19, 1978 after which posttrial memoranda were submitted on March 20, 1978. The following constitute my findings of fact and conclusions of law.

The International Society for Krishna Consciousness is a nonprofit religious corporation organized under the laws of New York. As one of its tenets, ISKCON devotees are required to perform a ritual called Sankirtan which consists of "religious chants, dancing, playing of sacred instruments and soliciting and accepting donations and contributions while disseminating religious literature and information in public places." (Affidavit of Romapada das, August 11, 1977, at ¶ 4). It is undisputed that ISKCON is bona fide religion entitled to constitutional protection.

The World Trade Center is a large complex located in lower Manhattan consisting of two 110 story towers and three smaller buildings. Connecting these buildings, which house federal and state agencies, as well as many commercial enterprises, is a vast shopping concourse with corridors which lead to and from all of the City's major transit systems. Thousands of people pass through the concourse each day hurrying to and from work, browsing in the shops, transacting business, and sightseeing. It is the potential access to such large numbers of people that apparently attracted plaintiffs to it as a prime location for the practice of Sankirtan. Accordingly, in 1976, plaintiffs approached officials of the Port Authority for the purpose of obtaining permission to perform Sankirtan in the Trade Center. Since the complex was in the midst of extensive construction, plaintiffs were requested to defer exercise of Sankirtan until construction was completed in the spring of 1977. Thereafter, representatives of the Port Authority met with ISKCON representatives to discuss limited access to the Trade Center. Plaintiffs agreed "to forego that portion of the ceremony which entails chanting, dancing and the playing of sacred instruments" (Affidavit of Romapada das, *supra* at ¶ 5) and on this motion they do not appear to seek relief with respect to these activities. On the contrary, according to Romapada das, they seek only "to stand quietly in public thoroughfares of the World Trade Center, to speak to passers-by and attempt to speak with them of the Worship of Krishna, to invite them to purchase literature and to donate money to support temples and enable them to print more literature." *Id.*

Toward this end the Port Authority promulgated proposed regulations for the practice of ISKCON activities. The text of these regulations is set forth in the margin.[1]

1. PRINCIPLES GOVERNING ISKCON ACTIVITIES AT THE WORLD TRADE CENTER COMPLEX *

* These draft principles are subject to the approval of the Port Authority's General Counsel, Director of World Trade and Director of Rail Transportation.

1. It is understood and agreed that the principles contained herein are subject to modification as the result of the obligation of the Port Authority to accommodate other groups or individuals seeking access for first amendment purposes to the World Trade Center complex. It is also understood and agreed that the principles contained herein are subject to any future reasonable regulations issued by the Port Authority governing the exercise of First Amendment activities and ISKCON agrees to comply with such regulations.

2. ISKCON, on behalf of itself and its representatives, agrees to limit its activities at the Trade Center complex to "permitted activities" as defined by paragraph 15; to the number of representatives designated by paragraph 5; the times designated by paragraph 11; and the areas designated by paragraph 14.

3. ISKCON representatives shall not approach any person or persons who are waiting in any line.

4. ISKCON representatives shall not conduct their activities at, in, or within fifteen (15) feet of any of the following:
   a. information booths;
   b. concession counters;
   c. another ISKCON representative;
   d. entrances to, exits from, or on elevators, stairways, or escalators, or any doors;
   e. restaurants, dining rooms, dining areas, or coffee shops;
   f. snack bars, mobil push carts, or bars;
   g. display cases or windows; or
   h. any other business establishment, business entity, or office located within the confines of The World Trade Center.

5. The total number of ISKCON representatives within the World Trade Center complex including the PATH station at the Trade Center shall at no time exceed ten (10) individuals.

They consist of area restrictions which limit plaintiffs to ten areas within the World Trade Center. Only one devotee may perform Sankirtan in any designated area and must stay at least fifteen feet from certain designated places. No more than ten devotees may be present in the Trade Center at any given time and Sankirtan may only be performed between the hours of 9:30 a. m. and 4:00 p. m. on weekdays and between 10:00 a. m. and 5:00 p. m. on weekends. Permitted activities consist of disseminating literature and accepting donations.

■ Plaintiffs contend that these regulations place an unconstitutional burden on their first amendment rights. While they recognize that the right to engage in first amendment activity is necessarily subject to

6. ISKCON representatives shall speak in a conversational tone and at no time shall they chant, dance, shout, make outcries, or use any device for voice amplification or use musical instruments or other sound devices.

7. No ISKCON representative shall:
a. Carry on any commercial activity;
b. Distribute food, real flowers, American flags or any other item for which the prior approval of the Port Authority has not been obtained. Donations may not be solicitated for the distribution of any such item;
c. Post or display commercial signs, advertisements, circulars or printed or written material;
d. Set up any table or other portable equipment;
e. Carry any signs or placards or affix any signs, placards or other material to any part of the World Trade Center complex;
f. Leave leaflets or other material unattended at any place in the World Trade Center complex;
g. Use any sound reproducing device for any purpose;
h. Engage in any unconsented to touching of any person in the Trade Center complex; and
i. Interfere in any way with the pedestrian traffic flow in the World Trade Center complex.

8. ISKCON shall designate a local representative as their liaison with the Port Authority and shall provide the Port Authority with identification of each ISKCON representative before he or she initiates any activity at the World Trade Center complex and such person shall each day sign in before beginning any activity and sign out after such activity is completed.

9. ISKCON representatives while conducting activities at the Trade Center complex shall wear on their left breast a clearly visible personal identification provided by ISKCON and an ISKCON identification provided by the Port Authority which must be returned daily.

10. ISKCON shall furnish to the Port Authority upon request copies of certifications, certificates of incorporation, or other documents evidencing the status of the International Society for Krishna Consciousness, Inc., as a religious organization.

11. ISKCON representatives shall conduct their activities within the World Trade Center complex only during the following hours: Monday through Friday, 10:00–4:00 p. m. except that the Port Authority reserves the right to prohibit ISKCON activities on the Trade Center Concourse during lunch time hours if in the opinion of the Port Authority it is found that such activities causes congestion or otherwise interferes with the normal use of the Trade Center complex for the purposes for which it was constructed; Saturday and Sunday 10:00 a. m.–5:00 p. m.

12. The Port Authority may refuse ISKCON representatives permission to conduct any activities within the World Trade Center complex because of special events and emergencies such as snowstorms, traffic accidents, power failures, transportation strikes or other conditions which in the opinion of Port Authority may effect the traffic flow in any of the designated areas, such that the conduct of the activities would create congestion or otherwise interfere with the normal use of the Trade Center complex for the purposes for which it was constructed.

13. The Port Authority reserves the right to advise the public through signs and/or announcements of the presence of ISKCON representatives in the World Trade Center complex and their non-affiliation with the Port Authority.

14. ISKCON representatives shall conduct their activities only in the areas of the World Trade Center complex designated as numbers 1-10 on the attached maps of the Trade Center complex which are made part of this understanding. No more than one ISKCON member may be in any designated area at any one time.

15. Permitted activities shall consist of disseminating literature and information concerning ISKCON and the acceptance of such donations as recipients of the literature desire to make. Specifically excluded from permitted activities is the setting of any particular amount as an acceptable donation or contribution except a minimum donation which is equal to the cost of printing may be requested for literature accepted and retained.

16. ISKCON on behalf of itself and representatives agrees to be bound by the foregoing principles.

reasonable regulations as to time, place and manner, *see, Wolin v. Port of New York Authority,* 392 F.2d 83 (2d Cir. 1968), they contend that the regulations at bar are arbitrary, irrational and not the least restrictive alternative to accomplish the Port Authority's legitimate goals.

■■ As movants for a preliminary injunction plaintiffs assume the heavy burden of demonstrating either (1) irreparable injury and a likelihood of success on the merits or (2) a balance of hardships tipping decidedly in their favor together with sufficiently serious questions going to the merits to make them a fair ground for litigation. *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973). Irreparable injury must be shown under the second prong of the *Sonesta* test as well as the first. *Jacobson & Co., Inc. v. Armstrong,* 548 F.2d 438, 441 (2d Cir. 1977). Plaintiffs claim they have met this burden. Irreparable injury, they assert, is evident since the denial of constitutional rights, even for a short time, constitutes irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The cases cited, of course, involve the complete abrogation of first amendment rights and, therefore, they are arguably inapposite in the instant case where defendants have not denied plaintiffs total access to the desired forum. Indeed, in *International Society for Krishna Consciousness v. Evans,* 440 F.Supp. 414, 421 n. 1, (S.D.Ohio 1977) the district court questioned whether irreparable injury was necessarily found where ISKCON representatives had access to a large number of people at an Ohio State Fair. Defendants in that case had not developed the argument and, accordingly, the Court was reluctant to advance it for them. In the instant case, however, defendants do assert that the broad access plaintiffs have been granted to large areas of the Trade Center precludes a finding of irreparable harm.

While I am inclined to share defendants' view, I need not decide that issue since I find that plaintiffs have failed to meet the second prong of the *Sonesta* test.

■ Plaintiffs argue that likelihood of success on the merits has been established because defendants have failed to demonstrate a compelling justification for the regulations imposed. According to plaintiffs, the number of ISKCON representatives permitted in the Trade Center was arbitrarily chosen and "bears no defensible relationship to the safe and orderly operation of the complex." (Plaintiffs' Post-Hearing Memorandum at 12). However, defendants chose this number after carefully considering the numbers of people who pass through the Trade Center each day and the effect plaintiffs' activities would have on the traffic flow. Robert Linn, a highly qualified architect, who is the manager of operations of the Trade Center, utilized both his own expertise and experience and that of a skilled traffic engineering group to select the distribution areas and the number of distributees permitted to practice within each area so as to minimize disruption in the already congested pathways. It is clearly the province of the Port Authority to set reasonable limits on the number of persons who may engage in an activity that is likely to disrupt the orderly flow of traffic in the Trade Center, *see Wolin v. Port Authority of New York,* 392 F.2d 83, 94 (2d Cir. 1968). Moreover, while plaintiffs baldly assert that limiting ISKCON representation to ten devotees is arbitrary and irrational, they neglect to suggest a number that they would consider reasonable. In fact, choosing any fixed number would seem arbitrary, yet necessary in order to strike a balance between the competing interests. I note that in *International Society for Krishna Consciousness v. Griffin,* 437 F.Supp. 666 (W.D.Pa.1977), which plaintiffs cite with approval, the Court decided that although two permits for an entire airport was an arbitrarily low limit, six permits more closely approximated "the desired ac-

commodation between First Amendment expression and orderly functioning of the airport." *Id.* at 671. Apparently, Judge Teitlebaum recognized the difficulties inherent in balancing the competing interests and concluded that six permits was not an unreasonably low number for the Pittsburgh airport. By analogy, I cannot at this time conclude that ten permits is an unreasonably low number for the Trade Center complex.

Plaintiffs also object to the regulation which provides that only one devotee may be in a designated area at a time and that devotees may not conduct their activities within fifteen feet of one another. Romapada das himself testified, however, that his policy is to avoid practicing Sankirtan in pairs, notwithstanding the mandates of his religion which teach that devotees must associate with other devotees and avoid "unrestricted association" with non-devotees. (Tr. 31–34). Romapada das acknowledged that practicing in pairs often frightens those approached and as a result he avoids such situations. Additionally, the presence of more than one devotee in any particular location is likely to add to the congestion of the passageways, just the result the Port Authority is trying to avoid. (Tr. 149).

Plaintiffs also argue that the area restrictions are unreasonable. Although the litigation appears to concern the entire Trade Center, for purposes of this motion only the outside plaza, the concourse and the area outside the turnstiles of the Port Authority Trans-Hudson transit line (PATH) are in dispute.

Plaintiffs assert that the areas designated for distribution on the concourse level are arbitrarily cut off at their northern ends nowhere near an intersection and that approaches to the IND and BMT subways which are straight corridors are banned without reason. As to the latter point it is sufficient to note that subway entrances tend to be congested areas and a failure to restrict activities that require people to stop and talk can only add to that confusion. The other areas to which plaintiffs seek access were specifically excluded either because they are highly trafficked with columns that divide the otherwise wide corridors and increase the congestion in an already congested area (Tr. 145–48) or because they are intersections where people are likely to stop and reassess their locations, a situation which in itself causes confusion and crowding. (See Tr. 145).

Plaintiffs further contend that there can be no reason for requiring devotees to remain fifteen feet from the fountain and surrounding benches in the outside plaza area. The plaza provides an opportunity for users of the Trade Center to sit and relax outdoors. Plaintiffs are permitted in four areas of the plaza and anyone coming onto the plaza would be exposed to a devotee. Devotees are not permitted near the benches or fountain because, defendants assert, persons using the plaza should be able to relax and eat their lunches without interruption by plaintiffs' activities. Defendants liken the public seated in the plaza area to the "captive audience" on a bus whose interests were protected in *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). This, of course, is an imperfect analogy to the case at bar since plaza patrons are free to move away from an undesired communication, while bus riders are not. However, as plaintiffs recognize, the use of public places

" . . . may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied."

*Hague v. CIO,* 307 U.S. 496, 516, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939).

In the instant case, where plaintiffs have ample accesss to persons interested in their teachings there is no need to disrupt the comfort and good order of the plaza area by creating a situation where people will be

required to get up and move away from an unwanted communication.

Plaintiffs claim that time restrictions also interfere with their first amendment rights. They cite *ISKCON v. Griffin, supra,* for the proposition that prohibiting solicitation "during the rush hours is patently unreasonable." *Id.* at 672. In that case, Judge Teitelbaum remarked that such a ban in the Pittsburgh Airport would in effect "allow expression only when its effects are destined to be futile." *Id.* Initially, I note that rush hour traffic in an airport is likely to be less dense than rush hour traffic in the Trade Center where thousands of people pour out of and into subways on their way to and from work. Moreover, plaintiff Romapada das' own testimony indicates that rush hour solicitation is less effective than other times because during rush hour "it's congested to the point . . . that people are less inclined to stop and give you a moment of their time than if it were less busy and at another place" (Tr. 56). Finally, prohibiting solicitation during non-rush hours does not amount to allowing expression only when it would be futile as in *Griffin,* supra. One devotee, Krsnastuta Devi Dasi, who has practiced Sankirtan at the World Trade Center many times, testified that one of the permitted areas was "always heavy" (Tr. 114) and that in other areas there was "a regular flow of traffic" and "it's always heavy during lunch hours" (Tr. 115). Another devotee, Gangagati Devi Dasi, who had practiced Sankirtan at the Trade Center five or six times, testified that some permitted areas have "real heavy traffic and it's hard to flag people down, get them to stop." (Tr. 128) In another area where she practiced Sankirtan it was less crowded, but as a result "easier to approach [people]." Additionally, defend-

ants' traffic studies (Exhts. 5 and 6) show a significant number of people entering and leaving all areas of the concourse throughout the day; it is inconceivable that a portion of that number do not pass through the areas to which plaintiffs have access.

Plaintiffs finally urge that restrictions on the materials for which devotees may solicit contributions is arbitrary and unreasonable.[2] However, Romapada das has indicated that devotees merely desire to talk with passersby and invite them to purchase their literature and donate moneys to their cause. Nowhere is it asserted that the religion requires devotees to distribute flowers or American flags. Plaintiffs have not, other than in their memorandum of law, ever indicated a desire to distribute American flags or flowers. For purposes of this preliminary injunction, then, plaintiffs have failed to establish that irreparable injury results from this prohibition.

Accordingly, for failure to meet the standards of proof required for a preliminary injunction, plaintiffs' motion is denied.

IT IS SO ORDERED.

---

**2.** Plaintiffs also argue that the regulations entitled "Principles Governing ISKCON at the World Trade Center Complex" constitute a Bill of Attainder. This position is totally without merit. These principles were formulated at plaintiffs' request so that a balance might be struck between their first amendment rights and the rights of the public using the Trade Center. It can hardly be argued that these regulations are an attempt to inflict punishment without a trial as plaintiffs suggest. Moreover, there has been no showing that other persons seeking to engage in first amendment activities have not been or would not be treated similarly.