## No. 79SA187

**International Society for Krishna Consciousness, Inc., a Colorado Religious Corporation,** *et. al.* **v. The Colorado State Fair and Industrial Exposition Commission,** *et. al.*

(610 P.2d 486)

Decided March 3, 1980.     Opinion modified and as modified rehearing denied May 5, 1980.

Ralph B. Rhodes, for plaintiffs-appellees.

J. D. MacFarlane, Attorney General, Richard Hennessey, Deputy, Mary Mullarkey, Solicitor General, Patricia W. Robb, Assistant Attorney General, for defendants-appellants.

*En Banc.*

JUSTICE GROVES delivered the opinion of the Court.


The plaintiff International Society for Krishna Consciousness, Inc. is a Colorado religious corporation and is here referred to by the abbreviation "ISKCON." It and some of its members brought this action in the district court against The Colorado State Fair and Industrial Exposition Commission (referred to as the "Commission"), the Attorney General of Colorado and officials and employees of Colorado having some connection with the Colorado State Fair. The plaintiffs sought and obtained an injunction against the enforcement of a Commission resolution as an unconstitutional violation of freedom of religion. The district court dealt with the matter on a rather restricted basis and, in the same narrow sense, we affirm.

The case was presented to the district court by stipulation of facts.

ISKCON is a part of an international religious organization which espouses the religious and missionary views of Krishna Consciousness, and is known as the Hare Krishna Society. Krishna Consciousness is a branch of Hinduism which believes in the absolute supremacy of a diety ("Krishna"). The antecedents of this monotheistic fundamentalist sect are ancient. Its scriptures are taken very literally. The Society maintains temples and schools throughout the world.

Krishna Consciousness imposes upon its members the duty to perform a religious ritual known as Sankirtan, which consists of going out into public places, spreading "religious truth," disseminating and selling religious literature and soliciting contributions to support its religious activities. The record establishes that the solicitation of funds is an essential part of Sankirtan.

Since 1891 the Colorado statutes have provided for an annual state fair and an industrial exposition under the care, direction and supervision of the Commission. Sections 35-65-101 *et seq.*, C.R.S. 1973. By statute the state fair is held annually at Pueblo, Colorado. The fairgrounds there are owned by the state of Colorado. They contain 102 acres, of which 73 acres are inside the fairgrounds gates. At each annual fair the Commission leases about 250 spaces to exhibitors. The operation expenses of the annual state fair are derived 12% from the general funds of the State and the remainder from income collected at the fair and from other activities on the grounds at other times of the year.

Prior to the 1977 fair ISKCON requested permission for its members to engage in Sankirtan on the fairgrounds during the fair. Acting through officials of the fair the Commission denied the request except that it

offered to rent booth space at which — and only at which — the plaintiff members might engage in Sankirtan. In court it appeared that this request had the following limitations, which the court accepted as correct:

"'We seek only to distribute literature and solicit donations at the Fair, and to discuss our religious beliefs with Fair patrons; we do not seek to dance, chant, or to engage in any disruptive conduct' . . . 'It is not our practice to detain patrons or to talk with them unless they express a willingness to listen.'"

Before that time the Commission had adopted a resolution which provides: "Exhibitors must confine all transactions to the space leased and shall not display signs, placards, brochures, advertisements, or solicit prospective customers in any location on the fairgrounds except within the contracted space. Exhibitors with demonstrations must plan their display so that those watching do not block aisles or interfere with neighboring exhibit areas."

The plaintiffs were offered booth space containing 20 feet in front footage and being 20 feet in depth. This the plaintiffs did not accept.

On August 27th, the date the 1977 fair opened, several members of ISKCON were on the fairgrounds soliciting donations. Security officers of the fair, including a captain of the Colorado State Highway Patrol, asked them to leave their flowers and literature with the security office while they attended the fair. This they refused to do and the security officers escorted them from the grounds.

There is no contention in the case that the Commission has discriminated — or seeks to discriminate — as between persons or groups in the enforcement of its resolution. That is, it applies the resolution uniformly as to any and all individuals and religious and other groups. Other religious groups rent booths at the fairs, and confine their activities to the space around them.

The Commission does not assert that ISKCON is not entitled to First Amendment protection, but merely wishes to limit that protection by the application of the resolution to regulate the time, place, and manner in which solicitation is conducted in order to prevent substantial disruption of the activities and operation of the Colorado State Fair. Likewise, ISKCON does not dispute that the State may, by proper regulation, limit protected activities as to time, place and manner of acting.

While an official of the fair appeared to urge loss of booth space rental as a primary reason for exclusion of the plaintiffs, the court held that this was no justification for impingement upon constitutionally protected rights. The Commission has not presented this as an issue here.

The court held that the resolution "constitutes an unconstitutional restriction on plaintiffs' right to distribute literature, to solicit donations and to discuss their religious beliefs with patrons attending the Colorado State Fair." It enjoined the defendants from enforcing the resolution so as to

deny such rights to plaintiffs.

The court stated that it recognized the activities of ISKCON members "are subject to reasonable regulation as to time, place, and manner of acting in the interest of the safety, comfort and convenience of the other patrons attending the fair." The Commission urged that the regulation be declared valid because, if the ISKCON members were permitted to circulate throughout the fair, an unacceptable degree of congestion would ensue. The court simply held that the evidence did not support such a conclusion.

In the trial court and in its opening brief here, the Commission stated the issue as,

"whether the First Amendment protects the plaintiffs from the application of a provision which was designed to regulate solicitation on the fairgrounds, in such a way as to prevent substantial disruption of the activities and the operations of the Fair."

In its reply brief it accepts the following ISKCON wording of the issue: Is it unconstitutional to restrict to a rented booth the rights of the ISKCON members to distribute literature, solicit donations and discuss their religious beliefs?

The trial court expressly chose not to follow *International Society for Krishna Consciousness v. Evans,* 440 F. Supp. 414 (S.D. Ohio 1977). That involved a similar booth restriction against ISKCON at the Ohio State Fair. The court there refused to enjoin its application. The Commission called to our attention that *Evans* made a distinction between *religious belief* of ISKCON members (which the booth rule did not affect) and their religious conduct (which apparently was not entitled to the same First Amendment protection). Irrespective of the correctness of the holding, as we view the record here, that matter is beyond the limits of consideration in this case.

*Evans* equated religious freedom with freedom of speech, but as the parties here have not pursued that issue, neither do we. Also, *Evans,* written by the trial judge, was predicated upon a factual finding that the congestion at the fair and crowd control justified the application of the booth rule. The factual finding was to the contrary here.[1]

---

[1] The Trial court found:

"Presumably it is to be concluded that if plaintiffs are permitted to circulate throughout the fair that an unacceptable degree of congestion would ensue. However, no evidence was presented of any actual experience that such is the case, and this Court is not inclined to indulge in the presumption suggested. However, one can easily imagine certain areas in which at certain times any congestion would cause inconvenience, e.g. in the immediate vicinity of the grandstand when the crowd is entering or leaving the grandstand. There are, unquestionably, other areas on the fairgrounds where the same situation would exist, and limitations of plaintiffs' exercise of roving solicitation could well be proper in such instances."

■ Since the trial court's injunctive order was issued on August 10, 1978, the United States Court of Appeals for the Seventh Circuit has announced two persuasive opinions involving regulations governing operation of the Chicago airports. *International Society for Krishna Consciousness, Inc. v. Rochford,* 585 F.2d 263 (7th Cir. 1978), and *International Society for Krishna Consciousness, Inc. v. Bowen,* 600 F.2d 667 (7th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979). The court approved certain regulations which restricted the activities of ISKCON. It affirmed the following preface made by the district judge in the decision being reviewed:

"Our federal constitution, through the 1st and 14th Amendments, establishes that neither Congress nor the legislature of a state, can make any '. . . law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press . . . .' U.S. Const. Amends. I, XIV; *see Jones v. City of Opelika,* 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691 (1942). Implementing this rule of the constitution, it has been recognized that hand distribution of religious tracts is an age-old form of missionary evangelism; it is more than preaching; it is more than distribution of religious literature. Its purpose is as evangelical as the revival meeting; and as a form of religious activity, it occupies the same estate under the First Amendment as do worship in churches and preaching from pulpits. And the mere fact that religious literature is sold, or contributions solicited, does not put this form of evangelism outside the pale of constitutional protection. *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *International Soc. for Krishna Con. v. City of New Orleans,* 347 F.Supp. 945 (E.D.La. 1972)." *International Society for Krishna Consciousness, Inc. v. Rochford,* 425 F. Supp. 734 (N.D. Ill. 1977).

It upheld exclusion of ISKCON activities in prescribed public areas, such as those in which airport officials are concerned about security (hijack, search and security areas), locations in which persons are in line, and locations in which space is limited (*e.g.,* doorways, escalators). It upheld proscription of ISKCON activities during an emergency.

In *Bowen* the situation is quite parallel to the instant case. There was a booth regulation at the Indiana State Fair. The trial court's injunction against the state fair officials was upheld. These officials were enjoined from requiring ISKCON members to practice Sankirtan in a booth. In affirming the injunction the court stated that the fair officials had not shown any evidence that serious disruption would have resulted from the ISKCON activities. It further declined to accept the argument that there was a denial of equal protection of the law when commercial activities were required to be confined to a booth, and religious activities were not.

In a supplemental brief the Commission has cited *Edwards v. Maryland State Fair and Agricultural Society,* 476 F. Supp. 153 (D.

Md. 1979). *See also, International Society for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809 (5th Cir. 1979). In *Edwards* ISK-CON challenged a booth rule similar to that of the Colorado State Fair. Here again a court concluded that what was being balanced was not religious *belief* versus state interest, but rather religious *conduct* versus state interest. As already stated, this was removed as an issue by the record, and is left for consideration to another day. Also left for another day is the correctness of the *Edwards* court test as to the booth rule of providing "a reasonable accommodation."

■ No errors of law being disclosed in the trial court's ruling, and no ground appearing to reverse its finding that the evidence did not support enforcement of the regulation against the plaintiffs, we accordingly affirm the trial court's judgment.